## THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JERRY JONES, On Behalf of Himself And All Others Similarly Situated, | Civil Action: |
| Plaintiff, | |
| vs. | |
| MEMC ELECTRONIC MATERIALS, INC., THE PLAN INVESTMENT COMMITTEE, PETER BLACKMORE, NABEEL GAREEB, MARSHALL TURNER, ROBERT J. BOEHLKE, JOHN MARREN, C. DOUGLAS MARSH, WILLIAM E. STEVENS, JAMES B. WILLIAMS, and JOHN DOES 1-20, | |
| Defendants. | |

## CLASS ACTION COMPLAINT
## FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT

Plaintiff, a participant in the MEMC Electronics Materials, Inc. 401(k) Savings Plan (the "Plan"), covering substantially all employees of MEMC Electronic Materials, Inc. and its subsidiaries and/or affiliates (collectively "MEMC" or the "Company"), individually and on behalf of all others similarly situated (the "Participants"), alleges as follows:

### INTRODUCTION

1.     This is a class action brought pursuant to § 502 of ERISA, 29 U.S.C. § 1132, against the Plan's fiduciaries, including MEMC, on behalf of Participants in and beneficiaries of the Plan.

2.     Throughout the Class Period (September 4, 2007 through the present), the Plan invested in MEMC common stock ("MEMC Stock" or "Company Stock"), which was offered as one of the investment alternatives in the Participant Contribution Component of the Plan.

3.      Plaintiff's claims arise from the failure of Defendants, who are the Plan fiduciaries, to act solely in the interest of the Participants and beneficiaries of the Plan, and to exercise the required skill, care, prudence, and diligence in administering the Plan and the Plan's assets during the Class Period, as is required by ERISA.

4.      Specifically, Plaintiff alleges in Count I that Defendants breached their fiduciary duties to Plaintiff in violation of ERISA by failing to prudently and loyally manage the Plan's investment in MEMC Stock by continuing to offer Company Stock as an investment option instead of suitable short-term options within the Plan, when the stock no longer was a prudent investment for Participants' retirement savings.  In Count II, Plaintiff alleges that Defendants who communicated with Participants regarding the Plan's assets, or had a duty to do so, failed to provide Participants with complete and accurate information regarding MEMC Stock sufficient to advise Participants of the true risks of investing their retirement savings in Company Stock. In Count III, Plaintiff alleges that Defendants, responsible for the selection, removal, and, thus, monitoring of the Plan's fiduciaries, failed to properly monitor the performance of their fiduciary appointees and remove and replace those whose performance was inadequate.  In Count IV, Plaintiff alleges that Defendants breached their duties and responsibilities to avoid conflicts of interest and serve the interests of the Participants in and beneficiaries of the Plan with undivided loyalty.  In Count V, Plaintiff alleges that Defendants breached their duties and responsibilities as co-fiduciaries in the manner and to the extent set forth in the Count.  Finally, in Count VI, Plaintiff states a claim against MEMC for knowing participation in the fiduciary breaches alleged herein.

- 2 -

5.      This action is brought on behalf of the Plan and seeks losses to the Plan for which Defendants are personally liable pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2).  In addition, under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), Plaintiff seeks other equitable relief from Defendants, including, without limitation, injunctive relief and, as available under applicable law, constructive trust, restitution, and other monetary relief.

6.      As a result of Defendants' fiduciary breaches, as hereinafter enumerated and described, the Plan has suffered substantial losses, resulting in the depletion of millions of dollars of the retirement savings and anticipated retirement income of the Plan's Participants.  Under ERISA, the breaching fiduciaries are obligated to restore to the Plan the losses resulting from their fiduciary breaches.

7.      Because Plaintiff's claims apply to Participants and beneficiaries as a whole, and because ERISA authorizes Participants such as Plaintiff to sue for plan-wide relief for breach of fiduciary duty, Plaintiff brings this as a class action on behalf of all Participants and beneficiaries of the Plan during the Class Period.  Plaintiff also brings this action as a participant seeking plan-wide relief for breach of fiduciary duty on behalf of the Plan.

8.      In addition, because the information and documents on which Plaintiff's claims are based are, for the most part, solely in Defendants' possession, certain of Plaintiff's allegations are by necessity upon information and belief.  At such time as Plaintiff has had the opportunity to conduct additional discovery, Plaintiff will, to the extent necessary and appropriate, further amend the Complaint, or, if required, seek leave to amend to add such other additional facts as are discovered that further support each of the following Counts below.

## JURISDICTION AND VENUE

9.    ***Subject Matter Jurisdiction.***  This is a civil enforcement action for breach of fiduciary duty brought pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a).  This Court has original, exclusive subject matter jurisdiction over this action pursuant to the specific jurisdictional statute for claims of this type, ERISA § 502(e)(l), 29 U.S.C. § 1132(e)(l).  In addition, this Court has subject matter jurisdiction pursuant to the general jurisdictional statute for "civil actions arising under the . . . laws . . . of the United States."  28 U.S.C. § 1331.

10.    ***Personal Jurisdiction***.  ERISA provides for nation-wide service of process, ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).  All of Defendants are residents of the United States, and this Court therefore has personal jurisdiction over them.  This Court also has personal jurisdiction over them pursuant to Fed. R. Civ. P. 4(k)(l)(A), because they all would be subject to the jurisdiction of a court of general jurisdiction in this District.

11.    ***Venue***.  Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan were administered in this district, some or all of the fiduciary breaches for which relief is sought occurred in this district, and/or some Defendants reside or maintain their primary place of business in this district.

## PARTIES

### Plaintiff

12.    ***Plaintiff Jerry Jones*** is a resident of Pearland, Texas.   Plaintiff is a former MEMC employee and is a participant in the Plan.

### Defendants

### A.    The Company Fiduciary

13.     ***Defendant MEMC*** is a Delaware corporation with its principal executive offices located at 501 Pearl Drive, St. Peters, Missouri.  MEMC is global leader in the manufacture and sale of wafers and has been a pioneer in the design and development of wafer technologies over the past four decades.

14.     Throughout the Class Period, MEMC's responsibilities included, along with its officers, directors and executives, broad oversight of and ultimate decision-making authority respecting the management and administration of the Plan and the Plan's assets, as well as the appointment, removal, and, thus, monitoring of other fiduciaries of the Plan that it appointed, or to whom it assigned fiduciary responsibility.  Throughout the Class Period, the Company exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets.

15.     MEMC is the Plan Sponsor.

16.     Pursuant to Plan documents, the Plan Sponsor shall appoint a Plan Investment Committee to serve at its pleasure.

17.     Pursuant to Plan documents, the Plan Sponsor shall also appoint a "Plan Administrator" to serve at its pleasure.  The Plan Administrator may be a corporation (including the Sponsor), an individual, a committee of individuals or any combination of the above.  The Plan Sponsor may change such appointments from time to time provided that such changes are published to the extent of enabling interested parties to ascertain the person or persons responsible for operating the Plan.  In absence of such an appointment, the Plan Sponsor shall serve as the Plan Administrator; provided that if the Plan Sponsor serves as the Plan Administrator, it shall designate specified individuals or other persons to carry out specified

fiduciary responsibilities under the Plan in such a manner and to such an extent that employees and other interested parties are able to ascertain the person or persons responsible for operating the Plan.

18.     Pursuant to Plan documents, the Plan Administrator may adopt, modify and eliminate such rules and procedures as may be necessary or appropriate for the investment directions of Participants, including but not limited to, rules on the time and manner of submitting investment directions and the periods in which no direction may be made, such as a transitional period when investment funds are changed.  Such rules shall be established in writing, and shall become effective at such time as is established by the Plan Administrator on or after a written description of such changes is sent to affected Participants in a manner reasonably calculated to be received by such participants.

### B.     The Board of Director Fiduciaries

19.     *Defendant Peter Blackmore ("Blackmore")* was, at relevant times, a Director of the Company.  During the Class Period, defendant Blackmore was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

20.     *Defendant Nabeel Gareeb ("Gareeb")* was, at relevant times, the Company's Chief Executive Officer and a Director of the Company.  During the Class Period, defendant Gareeb was a fiduciary within the meaning of ERISA, because he exercised discretionary

authority or discretionary control with respect to the appointment of the Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets. *On May 2, 20008, defendant Gareeb sold 615,901 shares of MEMC stock for proceeds of $40.26 million.*

21.    *Defendant Marshall Turner ("Turner")* was, at relevant times, a Director of the Company.  During the Class Period, defendant Turner was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

22.    *Defendant Robert J. Boehlke ("Boehkle")* was, at relevant times, a Director of the Company.  During the Class Period, defendant Boehkle was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

23.    *Defendant John Marren ("Marren")* was, at relevant times, the Chairman of the Board of the Company.  During the Class Period, defendant Marren was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of

the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

24.     *Defendant C. Douglas Marsh ("Marsh")* was, at relevant times, a Director of the Company.  During the Class Period, defendant Marsh was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

25.     *Defendant William E. Stevens ("Stevens")* was, at relevant times, a Director of the Company.  During the Class Period, defendant Stevens was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

26.     *Defendant James B. Williams ("Williams")* was, at relevant times, a Director of the Company.  During the Class Period, defendant Williams was a fiduciary within the meaning of ERISA, because he exercised discretionary authority or discretionary control with respect to the appointment of the Plan fiduciaries and with respect to the management of the Plan, he possessed discretionary authority or discretionary responsibility in the administration of the Plan, and he exercised authority or control with respect to the management of the Plan's assets.

C.     **The Plan Investment Committee Fiduciaries**

27.     *Defendant Plan Investment Committee*.  Pursuant to Plan documents, the Plan Investment Committee may be a corporation (including the Sponsor), an individual, a committee of individuals or any combination of the above.  The Plan Sponsor may change such appointment from time to time provided that such changes are published to the extent of enabling interested parties to ascertain the person or persons responsible for operating the Plan.  In absence of such an appointment, the Sponsor shall serve as the Plan Investment Committee; provided that if the Plan Sponsor serves as the Plan Investment Committee, it shall designate specified individuals or other persons to carry out specified fiduciary responsibilities under the Plan in such a manner and to such an extent that employees and other interested parties are able to ascertain the person or persons responsible for operating the Plan.  The Plan Administrator and the Plan Investment Committee may be the same person or persons.

28.     Pursuant to Plan documents, the Plan Investment Committee shall have general responsibility for the investment of Plan assets, *as authorized by the Board of Directors of the Sponsor,* including but not limited to the following: (i) to establish investment policies; (ii) to appoint, monitor and remove a Trustee or Trustees; (iii) to appoint, monitor and remove Investment Mangers, if any; and (iv) to select investment Funds.

29.     As of the date of filing this Complaint, the Plan Investment Committee members are unknown to Plaintiff.

30.     *Defendants John Does 1-20 ("John Does 1-20")* are residents of the United States and are or were fiduciaries of the Plan during the Class Period.  These defendants whose identities are currently unknown to Plaintiff, may include additional MEMC employees.  Once their identities are ascertained, Plaintiff will seek leave to join them under their true names.

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following class of persons similarly situated (the "Class"):

> All persons who were Participants in or beneficiaries of the Plan at any time between September 4, 2007 through the present (the "Class Period) and whose accounts held Company stock or units in the MEMC Stock.

32.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery.

33.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether Defendants each owed a fiduciary duty to Plaintiff and members of the Class;

(b)     whether Defendants breached their fiduciary duties to Plaintiff and members of the Class by failing to act prudently and solely in the interests of the Plan's Participants and beneficiaries; and

(c)     whether Defendants violated ERISA.

34.     Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the other members of the Class each sustained a diminution of vested benefits arising out of Defendants' wrongful conduct in violation of federal law as complained of herein.

35.     Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class action, ERISA, and complex civil and commercial litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

36.     Class action status in this ERISA action is warranted under Rule 23(b)(l)(B) because prosecution of separate actions by the members or the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical manner, be dispositive of the interests of the other members of the Class parties to the actions, or substantially impair or impede their ability to protect their interests.

37.     Class action status is also warranted under the other subsections of Rule 23(b) because: (i) prosecuting separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants; (ii) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole; and (iii) questions of law or fact common to members of the Class predominate over any questions affecting only individual members and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

**THE PLAN**

38.     The Plan is "employee pension benefit plan" as defined by §§ 3(3) and (3)(2)(A) of ERISA, 29 U.S.C. §§ 1002(3) and 1002(2)(A).

39.     The Plan is legal entities that can sue or be sued.  ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1).

40.     In this action for breach of fiduciary duty, the Plan is neither a plaintiff nor a defendant.   Rather, Plaintiff requests relief for the benefit of the Plan and for the benefit of its Participants.

41.     The Plan is "defined contribution plan" or "individual account" Plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34), in that the Plan provides for individual accounts for each participant and for benefits based solely upon the amount contributed to the Participants' account, and any income, expenses, gains and losses, and any forfeitures of accounts of other Participants which may be allocated to such Participants' accounts. Consequently, retirement benefits provided by the Plan are based solely on the amounts allocated to each individual's account.

42.     The Plan is a voluntary contribution Plan whereby Participants make contributions to the Plan ("Voluntary Contributions") and direct the Plan to purchase investments with those contributions from options pre-selected by Defendants which are then allocated to Participants' individual accounts.

43.     The Plan was established on April 1, 1989 under the provisions of Section 401(k) of the Internal Revenue Code and is a defined contribution retirement savings plan, subject to the provisions of ERISA, sponsored by the Company.   Generally, all employees of MEMC compensated in U.S. dollars from a payroll location within the United States are eligible to participate in the Plan.

44.     The Plan was originally established under the name of the DNS Electronic Materials, Inc. Retirement Savings Plan (the "DNS Plan") effective July 1, 1988.  Effective April 1, 1989, DNS acquired the assets of the Monsanto Electronic Materials Company, a division of

Monsanto Company, from the Monsanto Company, at which time DNS changed its name to MEMC Electronic Materials, Inc. ("MEMC"). MEMC established the MEMC Electronic Materials, Inc. Retirement Savings Plan for Salaried Employees effective April 1, 1989 and the MEMC Electronic Materials, Inc. Retirement Savings Plan for Hourly Employees effective April 1, 1989.

45.     MEMC split the DNS Plan into two plans effective January 1, 1990, as follows:

> The DNS Electronic Materials, Inc. Salaried Savings Plan (the "DNS Salaried Plan"'); and
>
> The DNS Electronic Materials, Inc. Hourly Savings Plan (the "DNS Hourly Plan").

46.     The MEMC Electronic Materials, Inc. Retirement Savings Plan for Salaried Employees was amended to merge the DNS Salaried Plan into the MEMC Salaried Plan; to amend the DNS Plan retroactively effective to its inception to comply with the Tax Reform Act of 1986 and other changes in the law; to provide for safe-harbor hardship withdrawal rights applicable to benefits transferred from the DNS Plan; and to add a provision relating to qualified domestic relations orders.

47.     The Plan was amended and completely restated in the form of a 1990 Restatement effective as of April 1, 1989. The 1990 Restatement incorporated changes previously submitted to the Internal Revenue Service on May 1, 1990 and June 1, 1990.

48.     The Plan was further amended by a Special Amendment, dated December 20, 1991, which merged a portion of the MEMC Electronic Materials, Inc. Retirement Savings Plan for Hourly Employees into this Plan and renamed the Plan the MEMC Electronic Materials, Inc. Retirement Savings Plan; a Third Amendment dated September 23, 1992; and a Fourth Amendment dated December 7, 1992.

49.     The Plan was further amended and completely restated in the form of a 1994 Restatement effective as of January 1, 1994, and a 1995 Restatement effective as of June 1, 1995. The 1995 Restatement was amended by a First Amendment effective January 1, 1996 and by a Special Amendment that provided for the transfer of certain plan assets.

50.     Pursuant to the Plan documents, the Plan is intended to provide a means whereby MEMC and participating affiliates may encourage their eligible employees to establish a regular method of savings and thereby create a fund available for their use at retirement or in the event of disability or death. It is intended that the Plan shall qualify as a cash or deferred profit sharing plan under Section 401 of the Internal Revenue Code of 1986.

51.     Participants may direct investment or reinvestment of contributions credited to his/her individual account in any one or a combination of the 12 available options in increments of 1% of the amount credits. Interfund transfers in and out of the MEMC Stock Fund are limited to one per calendar month. Participants may elect to adjust all other investment options daily.

52.     During the Plan year ended December 31, 2006, MEMC was required to suspend the use of the Form S-8 registration statement (No. 333-19159) for the Plan. MEMC had to suspend purchases, but not sales, of MEMC shares by participants in the Plan (a blackout period). The blackout only prevented Participants from making additional investments in MEMC's common stock fund through the 401(k) Plan. Participants were unable to buy MEMC common stock through the Plan during the blackout period, but Participants were able to sell MEMC common stock held in their Plan accounts during the blackout period by reallocating assets out of the MEMC common stock fund in their Plan account to another investment alternative.

- 14 -

53.     The blackout was in connection with the restatement of MEMC's financial statements for the quarterly periods ended march 31, 2005 and June 30, 2005.  As of September 19, 2006, MEMC filed all required Form 10-Qs and 10-Ks with the SEC and the blackout period was terminated, thereby allowing purchases of MEMC common stock by Participants in the Plan.

54.     Participants may elect to contribute from 1% to 50% of his/her covered compensation in the Plan on a before-tax basis.  This before-tax contribution is limited to the amount specified by Section 402(g) of the Internal Revenue Code ($15,000 and $14,000 in 2006 and 2005, respectively).  Participant are eligible to receive employer matching contributions of 100% of the first 3% of the employee's contribution, 50% of the next 2% of compensation as a special employer contribution on behalf of those individuals who were frozen in the MEMC Pension Plan or hired on or after January 2, 2002.

55.     Pursuant to the Company's Form S-8, the following documents filed with the SEC are incorporated herein by reference into the Plan:

> The Annual Report of MEMC Electronic Materials Inc. (the "Company") on Form 10-K for the year ended December 31, 1995, dated March 22, 1996, filed pursuant to Section 13(a) of the Securities Exchange Act of 1934, as amended (the "Exchange Act").
>
> The Registrant's Current Report on Form 8-K dated March 18, 1996;
>
> The Registrant's Quarterly Report on Form 10-Q for the three months ended March 31, 1996, dated May 1, 1996;
>
> The Registrant's Quarterly Report on Form 10-Q for the three months ended June 30, 1996, dated August 12, 1996;
>
> The Registrant's Current Report on Form 8-K dated September 10, 1996; and
>
> The Registrant's Quarterly Report on Form 10-Q for the three months ended September 30, 1996, dated November 13, 1996.

\*     \*     \*

> All documents subsequently filed by the Registrant pursuant to Sections 13(a), 13(c), 14 and 15(d) of the Exchange Act, including annual reports on Form 11-K which may be deemed to be filed by the MEMC Retirement Savings Plan, prior to the filing of a post-effective amendment which indicates that all securities offered have been sold or which deregisters all securities then remaining unsold, shall be deemed to be incorporated by reference herein and to be a part thereof from the date of filing of such reports and documents.  Any statement incorporated by reference herein shall be deemed to be modified or superseded for purposes of this Registration Statement to the extent that a statement contained herein or in any other subsequently filed document which also is or is deemed to be incorporated by reference herein modifies or supersedes such statement.  Any such statement so modified or superseded shall not be deemed, except as so modified or superseded, to constitute part of this Registration Statement.

56.     The Plan documents also provide that if a participant in the Plan directs any portion of his or her money into the MEMC Stock Fund, he or she will be given all future materials, including annual reports to stockholders, other reports, proxy statements, and other communications generally given to MEMC stockholders.

**The Plan Fiduciaries**

57.     *Named Fiduciaries*.  ERISA requires every plan to provide for one or more named fiduciaries of the plan pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1002(21)(A).  The person named as the "administrator" in the plan instrument is automatically a named fiduciary, and in the absence of such a designation, the sponsor is the administrator.  ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

58.     *De Facto Fiduciaries*.  ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under ERISA § 402(a)(1), but also any other persons who in fact perform fiduciary functions.  Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority

or control respecting management of disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i).

59.     Each of the Defendants was a fiduciary with respect to the Plan and owed fiduciary duties to the Plan and its Participants under ERISA in the manner and to the extent set forth in the governing the Plan documents, through their conduct, and under ERISA.

60.     As fiduciaries, Defendants were required by ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) to manage and administer the Plan -- and the Plan's investments -- solely in the interest of the Plan's Participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

61.     Plaintiff does not allege that each Defendant was a fiduciary with respect to all aspects of the Plan's management and administration.  Rather, as set forth below, Defendants were fiduciaries to the extent of the specific fiduciary discretion and authority assigned to or exercised by each of them, and, as further set forth below, the claims against each Defendant are based on such specific discretion and authority.

## MEMC STOCK WAS AN
## IMPRUDENT INVESTMENT FOR THE PLAN

62.     The Company manufactures wafers for major semiconductor device and solar cell manufacturers.  The nature of the Company's business is such that its raw materials are

specialized and are, therefore, obtained from sole source suppliers. The Company obtains its requirements for several raw materials, equipment, parts and supplies from sole suppliers pursuant to long term "take or pay" purchase agreements.

63. During August 2007, the Company's entire Pasadena Texas production site, which accounted for about 70% of MEMC's total production experienced a power outage, which caused a complete shutdown and a one week loss of production. The Company reported the event as follows in a September 4, 2007 Form 8-K:

> The company reported that mid-last week, a construction incident caused by one of its electrical subcontractors working on the Pasadena, Texas, polysilicon facility expansion resulted in a power outage to the entire site. Although the power was eventually restored later the same day, the unplanned and abrupt shutdown of high temperature and pressure chemical operations caused considerable complications. The facility is now in the late stages of recovery, but the abrupt nature of this incident, combined with the rain and thunderstorms in Pasadena, Texas over the last few days, has hampered the facility's ability to recover operations expeditiously. This disruption has also caused the on-going polysilicon expansion project at the site to be additionally delayed. The combined effect of these events has resulted in an approximate one week impact to the company's output for the quarter.
>
> As a result, the company is revising its Q3 guidance. Specifically, the company is now targeting revenues to be approximately 5% below the previously targeted level of $500 million and margins to be approximately flat sequentially from second quarter 2007 levels due to the associated costs.

64. The Company's Form 8-K was a fiduciary communication as it was incorporated into Plan documents.

65. As stated in an article entitled *Industryweek, MEMC Electronic Materials Inc.: Power Struggles Despite A Recent Plant Blackout*, dated October 11, 2007, MEMC executives and shareholders see sunny future prospects in silicon, By Brad Kenney: "[S]uch unplanned power disruptions at technologically sophisticated plants like MEMC's mean a long startup and

recalibration process both the short-and long-term repercussions were severe." Part of the reason for the "long startup is due to the fact that the Company's principal product, Polysilicon, is made "with a bunch of reactions ranging from 300 to 1700 degree Farenheight, and when there is a cold shutdown, all of the cooling water goes with it. That means the materials end up as gunk, and have to be cleaned out." David Lammers, News Editor -- *Semiconductor International*, 9/4/2007.

66.     Unbeknownst to the Plan members, the Company was unable to thoroughly clean and re-set the precision equipment during the one week shut-down because it did not have the technically competent staff to do so. It prematurely resumed production because the Company's "take or pay" contracts with suppliers would have cost the Company millions. As a result, technical problems continued.

67.     Defendants knew or failed to know that the Company did not have the technical staff required to properly scrub, re-set, and re-initialize the machinery. Moreover, Defendants were eager to cause the Pasadena facility to commence operations because a prolonged shutdown of the facility would have resulted in charges to earnings that would have alerted Plan members to the fact that Defendants had locked the Company into "take or pay" agreements which committed MEMC to pay for materials materially in excess of the amount that it could reasonably be expected to use in its production.

68.     On April 3, 2008, the Company announced that it had experienced several problems with excessive solvent residue buildups at the Pasadena facility. As stated by Defendant Gareeb during a conference call, buildup issues had affected the silane gas portion of its new Unit 3 polysilicon production unit. According to the Company, the instability issues

caused several periods of downtime and reduced total polysilicon production by approximately 20%, and that its new polysilicon production unit experienced several unscheduled shutdowns in the first quarter.

69.     As stated above, each unscheduled shutdown necessitated a long startup and recalibration process in which gunk had to be cleaned out.  However, Defendants kept putting the non-fixed Unit 3 back into production because the Company did not have a technically competent staff, and because Defendants wanted to avoid a buildup of raw materials which would lead to the recognition of material charges to earnings associated with MEMC's "take or pay" contracts.

70.     An April 3, 2008, Semiconductor International news article entitled *MEMC Fixing Buildup Issues at Texas Polysilicon Facility*, reported that, according to Defendant Gareeb:

> Initially, the company concluded that the excess solvent buildup in the silane gas production unit was caused by mechanical issues, which were fixed.  However, after the second solvent buildup, the cause was thought to be related to the chemistry, which was slightly altered.  Later, after a third buildup, the problems were found to be related to control units that provide feedback on the reactions within the sealed unit.

71.     The Company's Form 8-K was a fiduciary communication as it was incorporated into Plan documents.

72.     Disclosure of the foregoing caused the price of the Company's stock to drop from 76.39 to 73.76 in unusually heavy trading.

73.     On April 24, 2008, after the markets closed, the Company filed a Form 8-K with the SEC which disclosed declining profitability.  It reported that gross margin in the quarter was $259.3 million, or 51.7% of net sales, compared to $293.6 million, or 54.8% of sales, in the 2007

fourth quarter and that "the impact associated with the accelerated chemical deposit buildups at the company's Pasadena, Texas polysilicon manufacturing facility was the primary factor contributing to the sequential reduction in volumes, revenue and gross margin."

74.     The Company also reported operating income during the quarter of $218.4 million, or 43.6% of net sales.  This compared to $254.8 million, or 47.5% of net sales, for the 2007 fourth quarter and $187.7 million, or 42.6% of net sales, for the 2007 first quarter. Operating expenses were $40.9 million, or 8.2% of sales, compared to $38.8 million, or 7.2% of sales, in the 2007 fourth quarter, and $34.8 million, or 7.9% of sales, in the 2007 first quarter.

75.     On April 24, 2008, after the markets closed, the Company also held a conference call during which Defendant Gareeb stated that the Pasadena facilities "Unit 1 . . . was down for maintenance . . . .  That maintenance took a few days longer because we had run it to failure and so it took a little bit longer to clean up.  There was more to clean up."

76.     In addition, Defendant Gareeb stated that "nobody else" manufactures granular polysilicon at the scale which MEMC does "because it is difficult as a process."

77.     As a result of the foregoing disclosures (decreased profitability and another machine having been run "to failure"), the price of MEMC's stock dropped from 75.35 to 70.50 in heavy trading.  Thereafter, the price of MEMC's stock continued to decline.

78.     Unbeknownst to Plan participants, MEMC did not have the technically competent staff required to undertake adequate preventative and corrective maintenance operations on its reactors and other high tech equipment.  In addition, Plan participants did not know that Defendants were running the Company's equipment "to failure" in order to avoid disclosure of the fact that management had locked the Company into "take or pay" agreements which

committed MEMC to pay for materials far in excess of the amount that it could reasonably be expected to use.

79.     On July 23, 2008, after the markets closed, the Company filed a Form 8-K with the SEC which disclosed that the Company's financial results were "below the bottom end of our targeted range as the company encountered unanticipated events towards the tail end of the quarter."  The Company attributed the miss to:  "The premature failure of a relatively new heat-exchanger at the company's Merano, Italy facility in June [which] reduced the company's second quarter polysilicon output by just under five percent."  The Form 8-K also disclosed:

(a)     "a premature failure of a relatively new heat-exchanger at the company's Merano, Italy facility in June [which] reduced the company's second quarter polysilicon output by just under five percent."

(b)     "a loose pipe fitting [which] caused a fire at the company's Pasadena facility that required a shut down of half the silane production . . . for approximately a week."

80.     Dissemination of the news caused the price of the Company's stock to drop from 53.80 to 42.23 in unusually heavy trading.

81.     Once again, although Plan participants were unaware that the incidents were due to the fact that (i) MEMC did not have the technically competent staff required to undertake adequate preventative and corrective maintenance operations on its reactors and other high tech equipment, and that (ii) Defendants were running the Company's equipment "to failure" in order to avoid a huge raw material inventory build-up and charges to earnings that would have disclosed that management had locked the company into "take or pay" agreements which

committed MEMC to pay for materials far in excess of the amount that it could reasonable be expected to use.

82.     On October 23, 2008, after the markets closed, it became apparent why the Company used first aid to get machines up and running rather than intensive care to get them fixed.  On this date, the Company filed a Form 8-K with the SEC which disclosed "a $9.0 million charge related to the potential shortfall to our annual purchase obligation associated with a take or pay agreement for raw material supply to our Pasadena facility."

83.     Although the Company ultimately disclosed that it was materially under water on its "take or pay" materials purchase agreements, the Company has never disclosed that it does not have the technically competent staff required to undertake adequate preventative and corrective maintenance operations on its reactors and other high tech equipment.

**THE LAW UNDER ERISA**

84.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), provides, in pertinent part, that a civil action may be brought by a participant for relief under ERISA § 409, 29 U.S.C. § 1109.

85.     ERISA § 409(a), 29 U.S.C. § 1109(a), "Liability for Breach of Fiduciary Duty," provides, in pertinent part, that any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

86.     ERISA § 404(a)(l)(A) and (B), 29 U.S.C. § 1104(a)(l)(A) and (B), provides, in pertinent part, that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the Participants and beneficiaries, for the exclusive purpose of providing benefits to Participants and their beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

87.     These fiduciary duties under ERISA § 404(a)(l)(A) and (B) are referred to as the duties of loyalty, exclusive purpose and prudence, and are the "highest known to the law."  They entail, among other things:

(a)     The duty to conduct an independent and thorough investigation into, and continually to monitor, the merits of all the investment alternatives of a plan, including in this instance the Plan, which invested in MEMC Stock, to ensure that each investment is a suitable option for the Plan;

(b)     The duty to avoid conflicts of interest and to resolve them promptly when they occur.  A fiduciary must always administer a plan with an "eye single" to the interests of the Participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the Plan's sponsor; and

(c)     A duty to disclose and inform, which encompasses: (i) a negative duty not to misinform; (ii) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (iii) a duty to convey complete and accurate information material to the circumstances of Participants and beneficiaries.

88. ERISA § 405(a), 29 U.S.C. § 1105(a), "Liability for breach by co-fiduciary," provides, in pertinent part, that ". . . [i]n addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 404(a)(l), 29 U.S.C. § 1104(a)(l), in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

89. Plaintiff therefore brings this action under the authority of ERISA § 502(a)(2) for plan-wide relief under ERISA § 409(a) to recover losses sustained by the Plan arising out of the breaches of fiduciary duties by Defendants for violations under ERISA § 404(a)(l) and ERISA § 405(a).

## DEFENDANTS' FIDUCIARY STATUS

90. ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan." § 402(a)(l), 29 U.S.C. § 1102(a)(l).

91. During the Class Period, all of the Defendants acted as fiduciaries of the Plan pursuant to § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A) and the law interpreting that section. As outlined herein, Defendants all had discretionary authority and control with respect to the

management of the Plan and/or the management or disposition of the Plan's investments and assets, and/or had discretionary authority or responsibility for the administration of the Plan.

92.     During the Class Period, Defendants' direct and indirect communications with the Plan's Participants included statements regarding investments in Company Stock. Upon information and belief, these communications included, but were not limited to, SEC filings, annual reports, press releases, Company presentations made available to the Plan's Participants via the Company's website and the plan-related documents which incorporated and/or reiterated these statements. Defendants also acted as fiduciaries to the extent of this activity.

93.     In addition, under ERISA, in various circumstances, non-fiduciaries who knowingly participate in fiduciary breaches may themselves be liable.  To the extent any of the Defendants are held not to be fiduciaries, they remain liable as non-fiduciaries who knowingly participated in the breaches of fiduciary duty described below.

## CAUSES OF ACTION

## COUNT I

94.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

95.     At all relevant times, as alleged above, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

96.     As alleged above, Defendants were responsible, in different ways and to differing extents, for the selection and monitoring of the Plan's investment options, including the option of Company Stock.

97.     Under ERISA, fiduciaries who exercise discretionary authority or control over management of a plan or disposition of a plan's assets are responsible for ensuring that investment options made available to participants under a plan are prudent.  Furthermore, such fiduciaries are responsible for ensuring that assets within the plan are prudently invested. Defendants were responsible for ensuring that all investments in MEMC Stock in the Plan were prudent and that such investment was consistent with the purpose of the Plan.  Defendants are therefore liable for losses incurred as a result of such investments being imprudent.

98.     A fiduciary's duty of loyalty and prudence requires it to disregard plan documents or directives that it knows or reasonably should know would lead to an imprudent result or would otherwise harm plan participants or beneficiaries. ERISA § 404(a)(l)(D), 29 U.S.C. § 1104(a)(l)(D).  Thus, a fiduciary may not blindly follow plan documents or directives that would lead to an imprudent result or that would harm plan participants or beneficiaries, nor may it allow others, including those whom they direct or who are directed by the plan, including plan trustees, to do so.

99.     Moreover, during the Class Period, despite their knowledge of the imprudence of the investment, Defendants failed to take any meaningful steps to prevent the Plan, and indirectly the Plan's Participants and beneficiaries, from suffering losses as a result of the Plan's investment in MEMC Stock.

100.     The fiduciary duty of loyalty also entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with single-minded devotion to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

101.    Defendants breached their co-fiduciary obligations by, among their other failures: knowingly participating in, or knowingly undertaking to conceal, the failure to prudently and loyally manage the Plan's assets with respect to offering Company Stock as an investment option in the Plan; enabling Defendants' failure to prudently manage the Plan's assets with respect to the Plan's investments; and, having knowledge of the failure to prudently manage the Plan's assets, yet not making any effort to remedy the breach.

102.    Specifically, at least some of the Defendants had actual knowledge of MEMC's corporate malfeasance and questionable reporting and business.  In addition, in light of their high-ranking positions as high ranking officers at the Company, Defendants had/should have had constructive knowledge of these activities.

103.    Despite this knowledge, Defendants participated in each other's failures to prudently manage the Plan's assets and knowingly concealed such failures by not informing Participants that the Plan's holdings of MEMC Stock were not being prudently managed.  They also failed to remedy their mutual breaches of the duty to prudently manage the Plan's investment in MEMC Stock, despite inarguably having knowledge of such breaches.

104.    Furthermore, through their own failure to prudently and loyally manage the Plan's investment in MEMC Stock, or to undertake any genuine effort to investigate the merits of such investment, or to ensure that other fiduciaries were doing so, Defendants enabled their co-fiduciaries to breach their own independent duty to prudently and loyally manage the Plan's investment in MEMC Stock.

105.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's other Participants and beneficiaries, lost a

significant portion of their investments meant to help Participants save for retirement.  Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT II

106.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

107.    At all relevant times, as alleged above, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

108.    As alleged above, the scope of Defendants' fiduciary duties and responsibilities included disseminating the Plan documents and information to Participants regarding the Plan and assets of the Plan.  In addition, Defendants had a duty to provide Participants with information they possessed that they knew or should have known, would have an extreme impact on the Plan.

109.    The duty of loyalty under ERISA requires fiduciaries to speak truthfully to Participants, not to mislead them regarding the Plan or the Plan's assets, and to disclose information that Participants need in order to exercise their rights and interests under the Plan. This duty to inform Participants includes an obligation to provide Participants and beneficiaries of the Plan with complete and accurate information, and to refrain from providing inaccurate material information regarding the Plan's investment options such that Participants can make informed decisions with regard to investment options available under the Plan, this duty applies to all of the Plan's investment options, including investment in MEMC Stock.

110.    Defendant MEMC, through its officers and directors issued a multitude of inaccurate statements through SEC filings and press releases regarding value of MEMC Stock and the financial health of the Company.

111.    Upon information and belief, such communications were disseminated directly to all Participants, which incorporated by reference the Company's materially misleading and inaccurate SEC filings and reports furnished by MEMC, through its officers.  In addition, upon information and belief, the Company communicated directly with all Participants regarding the merits of investing in MEMC Stock in company-wide and uniform communications, and, yet, in the context of such communications failed to provide complete and accurate information regarding MEMC Stock as required by ERISA.

112.    In addition, Defendants were responsible for providing Participants in the Plan with investment education and communication.  Defendants, however, failed to disclose any information to the Plan Participants regarding MEMC's deceitful business practices and how these activities adversely affected Company stock as a prudent investment option under the Plan. Defendants thus breached their duty to provide Participants with complete and accurate information necessary for making informed investment decisions with regard to investment options under the Plan.

113.    Defendants breached their duty to inform Participants by failing to provide complete and accurate information regarding MEMC Stock, making material misrepresentations about the Company's financial condition, and, generally, by conveying inaccurate information regarding the soundness of MEMC Stock and the prudence of investing retirement contributions in the Company's stock.

114.    These failures were particularly devastating to the Plan and the Participants, as a certain percentage of the Plan's assets were invested in MEMC Stock during the Class Period and, thus, the stock's precipitous decline had an enormous impact on the value of Participants' retirement assets.

115.    In addition, MEMC and the other defendants knew or should have known that information they possessed regarding the true condition of MEMC would have an extreme impact on the Plan.  Yet, in violation of their fiduciary duties, these Defendants failed to provide Participants with this crucial information.

116.    As a consequence of the failure of Defendants to satisfy their disclosure obligations under ERISA, Participants lacked sufficient information to make informed choices regarding investment of their retirement savings in MEMC Stock, or to appreciate that under the circumstances known to the fiduciaries, but not known by Participants, MEMC Stock was an inherently unsuitable and inappropriate investment option for their plan accounts.  Had accurate information been provided, Participants could have protected themselves against losses accordingly, and consequently, Participants relied to their detriment on the incomplete and inaccurate information provided by Defendants in their fiduciary communications and failures thereof.

117.    As a consequence of Defendants' breaches of fiduciary duty alleged in this Count, the Plan suffered tremendous losses.  If Defendants had discharged their fiduciary duties to prudently invest the Plan's assets, the losses suffered by the Plan would have been minimized or avoided.  Therefore, as a direct and proximate result of the breaches of fiduciary and co-fiduciary

duties alleged herein, the Plan, and indirectly Plaintiff and the other Class members, lost millions of dollars of retirement savings.

118.    Pursuant to ERISA §§ 409 and 502(a), 29 U.S.C. §§ 1109(a) and 1132(a), Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count and to provide other equitable relief as appropriate.

## COUNT III

119.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

120.    At all relevant times, as alleged above, MEMC and defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  At all relevant times, as alleged above, the scope of the fiduciary responsibilities of MEMC and defendants included the responsibility to appoint, evaluate, and monitor other fiduciaries.  The duty to monitor entails both giving information to and reviewing the actions of the monitored fiduciaries.

121.    The monitoring fiduciaries, MEMC and defendants had the duty to:

(a)    Ensure that the appointed the Plan fiduciaries possess the needed credentials and experience, or use qualified advisors and service providers to fulfill their duties. They must be knowledgeable about the operations of the Plan, the goals of the Plan, as noted above, and the behavior of the Plan's Participants;

(b)    Ensure that the appointed Plan fiduciaries are provided with adequate financial resources to do their job;

(c)    Ensure that the appointed Plan fiduciaries have adequate information to do their job of overseeing the Plan's investments;

(d)     Ensure that the appointed Plan fiduciaries have ready access to outside, impartial advisors when needed;

(e)     Ensure that the appointed Plan fiduciaries maintain adequate records of the information on which they base their decisions and analysis with respect to the Plan's investment options; and

(f)     Ensure that the appointed Plan fiduciaries report regularly to the Company, the Company must then review, understand, and approve the conduct of the hands-on fiduciaries.

122.    Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.   In addition, a monitoring fiduciary must provide the monitored fiduciaries with complete and accurate information in their possession that they know or reasonably should know that the monitored fiduciaries must have in order to prudently manage the plan and the plan assets.

123.    MEMC and defendants breached their fiduciary monitoring duties by, among other things, (a) failing to ensure that the appointed Plan fiduciaries were given adequate information about the Company's business problems alleged above, which made Company Stock an imprudent investment, which was necessary for them to perform their duties of overseeing the Plan's investments, and (b) failing to ensure that the monitored fiduciaries completely appreciated the huge risk of significant investment by rank and file employees in an undiversified employer stock fund which was made up primarily of Company Stock, an

investment that was imprudent and inherently subject to significant downward movements, especially here where the stock was artificially inflated by non-public corporate malfeasance and illicit activities.

124.    MEMC and defendants also breached this duty by not properly disclosing information, that they knew or should have known, about the Company's improper business practices to the Trustee.  The Trustee is responsible for investing and managing assets of the Plan.  However, in doing so, the Trustee shall be subject to the direction and guidance of MEMC.

125.    MEMC and the other defendants knew or should have known that the fiduciaries they were responsible for monitoring were (a) imprudently allowing the Plan to continue offering MEMC Stock as an investment alternative for the Plan, and (b) continuing to invest the assets of the Plan in MEMC Stock when it no longer was prudent to do so.  Despite this knowledge, MEMC and defendants failed to take action to protect the Plan, and concomitantly the Plan's Participants, from the consequences of these fiduciaries' failures.

126.    MEMC and defendants are liable as co-fiduciaries because they knowingly participated in each other's fiduciary breaches as well as those by the appointed Plan fiduciaries, they enabled the breaches by these Defendants, and they failed to make any effort to remedy these breaches, despite having knowledge of them.

127.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's other Participants and beneficiaries, lost a significant portion of their investments meant to help Participants save for retirement.

128.     Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C., § 1109(a), Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT IV

129.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

130.     At all relevant times, as alleged above, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

131.     ERISA § 404(a)(l)(A), 29 U.S.C. § 1104(a)(l)(A), imposes on a plan fiduciary a duty of loyalty, that is, a duty to discharge his/her duties with respect to a plan solely in the interest of the Participants and beneficiaries and for the exclusive purpose of providing benefits to Participants and beneficiaries.

132.     Given the allegations listed above, Defendants clearly placed the interests of themselves and the Company, as evidenced by the longstanding artificial inflation of Company Stock, before the interests of the Plan and its Participants and beneficiaries.  These conflicts of interest put Defendants in the inherently problematic position of having to choose between their own interests as directors, officers, executives (and MEMC stockholders), and the interests of the Plan's Participants and beneficiaries, in whose interests Defendants were obligated to loyally serve with an "eye single."

133.     Defendants breached their duty to avoid conflicts of interest and to promptly resolve them by, *inter alia*: failing to engage independent fiduciaries who could make independent judgments concerning the Plan's investment in MEMC Stock; failing to notify

appropriate federal agencies, including the SEC of the facts and transactions which made MEMC Stock an unsuitable investment for the Plan; failing to take such other steps as were necessary to ensure that Participants' interests were loyally and prudently served; with respect to each of these above failures, doing so in order to prevent drawing attention to the Company's inappropriate practices; and by otherwise placing the interests of the Company and themselves above the interests of the Participants with respect to the Plan's investment in Company Stock.

134.   Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT V

135.   Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

136.   ERISA § 405(a), 29 U.S.C. § 1105, imposes liability on a fiduciary, in addition to any liability which he may have under any other provision, for a breach of fiduciary responsibility of another fiduciary with respect to the same plan if (a) he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (b) he fails to comply with § 1104(a)(l) in the administration of his specific responsibilities which give rise to his status as a fiduciary, by enabling such other fiduciary to commit a breach; or (c) he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

137.   As alleged herein, MEMC, through its officers and employees withheld material information from the Plan's Participants and provided misleading disclosures, by the conduct set

forth above, and profited from such practices, and, thus, knowledge of such practices is imputed to these defendants as a matter of law.  In addition, as alleged herein on information and belief, MEMC and the other defendants participated in and/or knew about the Company's misrepresentations regarding the Company's financial condition.  Thus, these defendants as well had knowledge at all relevant times of the factual matters pertaining to the imprudence of MEMC Stock as an investment for the Participants' retirement assets.

138.    Despite this knowledge, Defendants knowingly participated in their co-fiduciaries' failures to prudently and loyally manage the Plan's investment and holding of MEMC Stock during the Class Period.  They did so by themselves making imprudent and disloyal decisions respecting the Plan's investment in MEMC Stock in the manner alleged herein in violation of ERISA § 405(a)(l)(A).  In addition, these same defendants failed to undertake any effort to remedy their co-fiduciaries' and one-another's failures to prudently and loyally manage the Plan's investment in MEMC Stock despite knowing such failures were breaches of fiduciary duty under ERISA.  Instead, they allowed the harm to continue and contributed to it throughout the Class Period in violation of ERISA § 405(a)(l)(C).

139.    In further violation of ERISA § 405(a)(l)(C), Defendants also knew that inaccurate and incomplete information had been provided to Participants, yet, they failed to undertake any effort to remedy this breach by ensuring that accurate disclosures were made to Participants and the market as a whole.  Instead, they compounded the problem by downplaying the significance of MEMC's problems and further concealing such practices from Participants and the market as a whole.

140.    In addition, Defendants enabled the imprudent asset management decisions of any and all other defendant -- including any appointed plan fiduciaries -- who lacked knowledge of the circumstances rendering the stock imprudent, by failing to provide such persons with complete and accurate information regarding the stock, or to the extent all such persons possessed the information, by failing to ensure that they appreciated the true risks to the Plan caused by the Company's improper practices, so that these other defendants could effectively discharge their obligation to prudently and loyally manage the Plan's investment in MEMC Stock.   In so doing, Defendants breached ERISA § 405(a)(l)(B).

141.    Further, through their failure to properly and effectively monitor and remove those fiduciaries whose performance was inadequate as alleged above, Defendants enabled these appointed plan fiduciaries' imprudent management of the MEMC Stock in the Plan.

142.    As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly Plaintiff and the Plan's other Participants and beneficiaries, lost a significant portion of their retirement investment.

143.    Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## COUNT VI

144.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

145.    To the extent that MEMC is found not to have been a fiduciary or to have acted in a fiduciary capacity with respect to the conduct alleged to have violated ERISA, MEMC

knowingly participated in the breaches of those defendants who were fiduciaries and acted in a fiduciary capacity and as such is liable for equitable relief as a result of participating in such breaches.

146.    MEMC benefited from the breaches by discharging its obligations to make contributions to the Plan in amounts specified by contributing MEMC Stock to the Plan while the value of the stock was inflated as the result of the breaches of fiduciary duty alleged herein and as a result of MEMC providing the market with materially misleading statements and omissions.  Accordingly, MEMC may be required to disgorge this benefit or a constructive trust should be imposed on treasury shares of MEMC Stock which would have been contributed to the Plan, but for MEMC's participation in the foregoing breaches of fiduciary duty.

## CAUSATION

147.    Upon information and belief, the Plan suffered millions of dollars in losses in Plan benefits because substantial assets of the Plan were imprudently invested or allowed to be invested by Defendants in MEMC Stock during the Class Period, in breach of Defendants' fiduciary duties.  These losses to the Plan were reflected in the diminished account balances of the Plan's Participants.

148.    Defendants are responsible for losses in the Plan benefits caused by the Participants' direction of investment in MEMC Stock, because Defendants failed to take the necessary and required steps to ensure effective and informed independent participant control over the investment decision-making process, as required by ERISA § 404(c), 29 U.S.C. § 1104(c), and the regulations promulgated thereunder.   Defendants provided inaccurate, incomplete and materially misleading information to the Plan Participants regarding the true

health and ongoing profitability of the Company, thereby misrepresenting the Company's soundness as an investment vehicle.   As a consequence, Participants could not exercise independent control over their investments in MEMC Stock, and Defendants remain liable under ERISA for losses caused by such investment.

149.   Had Defendants properly discharged their fiduciary and/or co-fiduciary duties, including the provision of full and accurate disclosure of material facts concerning investment in MEMC Stock, eliminating such Company Stock as an investment alternative when it became imprudent, and divesting the Plan from its holdings of MEMC Stock when maintaining such an investment became imprudent, the Plan would have avoided a substantial portion of the losses that it suffered.

150.   Also, reliance is presumed in an ERISA breach of fiduciary duty case. Nevertheless, to the extent that reliance is an element of the claim, Plaintiff relied to their detriment on the misstatements and omissions that Defendants made to the Plan Participants.

## REMEDY FOR BREACHES OF FIDUCIARY DUTY

151.   Defendants breached their fiduciary duties in that they knew or should have known the facts as alleged above, and therefore knew or should have known that the Plan's assets should not have been invested in MEMC Stock during the Class Period.   As a consequence of Defendants' breaches, the Plan suffered significant losses.

152.   ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109.  Section 409 requires "any person who is a fiduciary. . . who breaches any of the . . . duties imposed upon fiduciaries . .

. to make good to such plan any losses to the plan . . . ."  Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate . . . ."

153.    With respect to calculation of the losses to a plan, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the Participants and beneficiaries in the Plan would not have made or maintained their investments in the challenged investment and, where alternative investments were available, that the investments made or maintained in the challenged investment would have instead been made in the most profitable alternative investment available.  In this way, the remedy restores the values of the Plan's assets to what they would have been if the Plan had been, properly administered.

154.    Plaintiff and the Class are therefore entitled to relief from Defendants in the form of: (a) a monetary payment to the Plan to make good to the Plan the losses to the Plan resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as provided by ERISA § 409(a), 29 U.S.C. § 1109(a); (b) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a) and 502(a)(2-3), 29 U.S.C. §§ 1109(a) and 1132(a)(2-3); (c) reasonable attorney fees and expenses, as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law; (d) taxable costs; (e) interest on these amounts, as provided by law; and (f) such other legal or equitable relief as may be just and proper.

155.    Under ERISA, each defendant is jointly and severally liable for the losses suffered by the Plan in this case.

**ERISA SECTION 404(c) DEFENSE INAPPLICABLE**

156.   ERISA § 404(c) is an affirmative defense that provides a limited exception to fiduciary liability for losses that result from Participants' exercise of control over investment decisions.   In order for § 404(c) to apply, Participants must in fact exercise "independent control" over investment decisions, and the fiduciaries must otherwise satisfy the procedural and substantive requirements of ERISA § 404(c), 29 U.S.C. § 1104(c) and the regulations promulgated under it.

157.   Those provisions were not complied with here as, among other reasons, instead of taking the necessary steps to ensure effective participant control by complete and accurate material information disclosure, Defendants did exactly the opposite.   As a consequence, Participants in the Plan did not have informed control over the portion of the Plan's assets that were invested in MEMC Stock as a result of their investment directions, and Defendants remained entirely responsible for losses that result from such investment.

158.   Because ERISA § 404(c) does not apply here, Defendants' liability to the Plan, Plaintiff and the Class for relief stemming from Participants' decisions to invest contributions in MEMC Stock is established upon proof that such investments were or became imprudent and resulted in losses in the value of the assets in the Plan during the Class Period.

159.   Furthermore, under ERISA, fiduciaries -- not Participants -- exercise control over the selection of investment options made available to Participants.   Thus, whether or not Participants are provided with the ability to select among different investment options, and whether or not Participants exercised effective control over their investment decisions (which was not the case here), liability attaches to the fiduciaries if an imprudent investment is selected by the fiduciaries and presented as an option to Participants, and as a result of such action the

Plan suffers a loss.  Because this is precisely what occurred in this case, Defendants are liable for the losses incurred by the Plan.

160.    Finally, Defendants remain liable for Plan losses that pertain to MEMC Stock acquired by the Plan with employer contributions, as Participants did not exercise any control.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for:

A.    A Declaration that Defendants, and each of them, have breached their ERISA fiduciary duties to the Participants;

B.    A Declaration that Defendants, and each of them, are not entitled to the protection of ERISA § 404(c)(l)(B), 29 U.S.C. § 1104(c)(l)(B);

C.    An Order compelling Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, including losses to the Plan resulting from imprudent investment of the Plan's assets, and to restore to the Plan all profits Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the Participants would have made if Defendants had fulfilled their fiduciary obligations;

D.    Imposition of a Constructive Trust on any amounts by which any Defendant was unjustly enriched at the expense of the Plan as the result of breaches of fiduciary duty;

E.    An Order enjoining Defendants, and each of them, from any further violations of their ERISA fiduciary obligations;

F.    An Order requiring Defendants to appoint one or more independent fiduciaries to participate in the management of the Plan's investment in MEMC Stock;

G.      Actual damages in the amount of any losses the Plan suffered, to be allocated among the Participants' individual accounts as benefits due in proportion to the accounts' diminution in value;

H.      An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

I.       An Order awarding attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

J.       An Order for equitable restitution and other appropriate equitable monetary relief against Defendants

Dated:  December 23, 2008

**DYSART TAYLOR LAY COTTER  &
McMONIGLE P.C.**


By:  ___/s/ *Don R. Lolli*_____
Don R. Lolli          EDMo#56263
4420 Madison Ave
Kansas City, MO 64111
Telephone: (816) 931-2700
Email: dlolli@dysarttaylor.com

**GAINEY & McKENNA**
Thomas J. McKenna
295 Madison Avenue, 4th Floor
New York, New York 10017
Telephone:  (212) 983-1300
E-mail: tjmlaw2001@yahoo.com
        tjmckenna@gaineyandmckenna.com


*Attorneys for Plaintiff*